I'm Art Allen. I represent the appellant, Mickey Thomas, in this case. We're here asking that this Court reverse the decision of the district court which denied Mr. Thomas's suppression motion. It's our position that Mr. Thomas was constructively arrested without probable cause, and that statements elicited from him during that illegal detention constitute fruits of the poisonous tree and should have been suppressed. Very briefly, the factual issues are set out. Unfortunately, I would have to concede that the trial attorney did not develop the timeline as closely or as definitively as I would have liked for this Court. But what we do know is that at about 20 minutes till midnight is the first time that we actually have, and that's an officer responding to a call at a movie house in the northwest portion of Las Vegas to someone with a gun. How long that call had come in, what time the call came in, the record doesn't reflect. But by the time that officer arrived, two black males were already handcuffed and were in place in front of a police car. So using the earliest time of 20 minutes to midnight, we know that Mr. Thomas was already detained at that point, handcuffed, along with another black male. A 9-11 call had come in saying that there were two black males involved in a verbal altercation with a group of men in a pickup truck, that one of the black males in the 9-11 caller could not identify which one had held what appeared to be a handgun down at his side, not made threats, not pointed weapon. Police helicopter observed a female from the group detach herself from the group and take off in a different direction. Officers pursued her. She threw a handgun into the back of a pickup that was parked in the lot. She was detained. The handgun was retrieved. The main officer involved in this, Detective Joe Kelly, was called at 3 minutes past midnight. So by this point, we're 23 minutes into this at least. He arrived 6 minutes later on the scene, 9 minutes past midnight. By the time he arrived, he observed the two black males handcuffed in front of the police marked patrol car. The mother of the teenage girl who had been seen throwing the handgun had already by that point been contacted and had arrived on the scene. The record does not, unfortunately, reflect how long it took to contact her, how long it took for her to get over to the scene. Counsel, I'm not sure what the pertinence is of the timeline for the following reason. I guess, assuming that probable cause was required, I'm not sure I understand your argument as to why there was not probable cause. The 911 caller had reported a fight that involved a gun, a weapon, a firearm of some sort. The officers saw that a gun was being passed from one person to another. They actually saw the young woman with it. And by the time they stopped your client, they knew that he or right as soon as they stopped him, they knew that he was on probation for a felony. Why isn't there a probable cause to believe that he had possession of that firearm? Your Honor, because the government has put a slightly different spin on the facts of this case than the record really supports. Did I state anything that was not in the record? Your Honor, the police did not see a handgun being passed from a black male to the female who separated herself. There is at least conflicting testimony. At one point, the officer said because she left the group, she became a subject of interest and was pursued. At another point, the record says they saw something handed to her, but it was never defined as being a handgun, nor was the end of the group. But the 911 caller had said there was a firearm. Had. So why wouldn't they draw a reasonable inference that the object being passed was that firearm? I'm not sure that's a reasonable inference, Your Honor, at this point, without knowing who these people are. The other inference you would take is that it wasn't passed to her and, therefore, remained with your client. The problem with that, Your Honor, is when we talk about our client, of this group, there were, one, two, three females and two black males. The 911 caller was unable to identify which of the males had had the handgun. And, in fact, after Officer Kelly arrived, he talked to her. Her name was — sorry, let me double-check that — Ms. Nelson. And the two males were, at that point, still handcuffed when Kelly is talking to her right at the scene, and she still cannot identify which of the two males. Now, Your Honor, I'm not saying it's unreasonable, perhaps, for them to have thought that someone in this group, but suppose there had been a hundred people there. Well, there weren't, though. That's so far from these facts. If one of two people has a gun, and you're standing in front of the two of them, and you know that one of the two of them has a gun, and that one of them is a felon, why isn't it reasonable or probable that, you know, you don't have to be 100 percent certain to have probable cause? No, concededly, Your Honor. But what we actually had here, probable cause did develop. The question is, for this Court, is when it developed. And at the point that our client has been handcuffed, has been detained, we're now up to about 30 minutes by the time — at least 30 minutes, and probably based upon the fact that the girl, the teenage girl's mother had been contacted by phone, was already on the scene, written statements had been obtained from the three — or the two other females that were in the group, none of which identified which of the males had it. We're really doing an investigation, Your Honor, is where the problem is. And we simply don't detain people during the course of an investigation, even though we may think some of this group, if there were — Even when one of them may have a firearm that could be used against the investigating officer? Your Honor, the firearm at that point had been recovered, and had been recovered at a point down the — And they have to assume that's the only one, that those are people who would just definitely only have one? I wouldn't assume that, but I would assume that at the point the police handcuffed and detained these people, that they at least did a pat-down search and were reasonably assured there were no other weapons and no issue of officer safety involved. There was no reason to continue the detention at that point. Your Honor, I see my time is running short. If I may save a minute or so for rebuttal. If you may. Good morning. May it please the Court and counsel, my name is Gregory Dam. I'm an assistant United States attorney representing the United States of America in this case. The defendant appears to be arguing in his brief that probable cause in this case was not developed until after the defendant confessed to possessing the firearm in question. We, however, believe that, as we've indicated in our opening — or our answering brief, in the first 20 minutes after their arrival, the police officer's arrival, officers had detained the defendant, recovered the firearm, been told by Juvenile Verdun that the defendant gave the firearm to her and learned that the defendant was a convicted felon, establishing probable cause to arrest. This all occurred before Detective Kelley arrived on the scene. In answer to your question, Judge Graber, about the defendant's argument about a lack of probable cause, this seems to stem from a statement that they make in their opening brief at footnote 4 on page number 15, where they seem to discount the testimony of the Juvenile Verdun and indicate that the only direct evidence implicating Thomas came from the juvenile actually found in propinquity with the weapon. This individual's bias and incentive to implicate another is self-evident. That, in my opinion, certainly doesn't negate the finding of probable cause that was occasioned after the police officers knew that the defendant was a felon and had spoken to Ms. Verdun, who indicated that it was the defendant who gave her that weapon. The finding of probable cause is established, additionally, by the magistrate's report and recommendation, the factual portions of which the defendant does not contest. The magistrate indicated that the officers had reasonable suspicion to conduct an investigatory detention of Thomas and others at the scene, which developed probable cause to arrest Thomas once Verdun told officers Thomas was the one who had given her the gun. By the time Kelly had arrived at the scene, Sergeant Coe had already run Thomas on the police computer and learned he was a convicted felon for robbery on probation. It's a very clear-cut establishment of probable cause, in my opinion. Unless this Court has any additional questions, I'd be more than happy to, on my time here, to counsel for Defendant Lynn or to co-counsel for the defendant in this case. Roberts. Go ahead. I don't have any. I'm sorry. Did you have a question? No, I didn't. Oh, I'm sorry. There don't appear to be any. Thank you. Thank you. I just want to very briefly just to address one point, and that is, again, conceding that the record in this matter is somewhat confusing from the evidentiary hearing. However, Detective Kelly's testimony at two different points contradicts the factual basis that the government would have this Court accept. At page 38 of the record, Sergeant Coe, who was already on the scene when Detective Kelly arrived, informed Detective Kelly that there were, quote, two possible suspects, in other words, meaning the two black males who were handcuffed. That seems to very clearly define the police had not pointed to the one individual, that being Mr. Thomas, that they later charged. Further in his testimony at page 46 of the excerpt of record, Detective Kelly himself says that after arriving at this point, quote, we didn't know which male had the gun. And that is the investigating officer's own statement, which contradicts that they arrived, they looked, there are two, they know that Mr. Thomas had it. Okay. I think we understand your point. Thank you, Your Honor. Thank you. Ace just argued is submitted for decision. We'll hear the next case, which is Top Rank v. Brewster.
judges: Schroeder, Graber, Duffy